# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**ERIC K. BROOKS,**

**Plaintiff,**

**vs.**                                        **Case No. 4:19cv288-RH-MAF**

**AARON JAMES BLEVINS, et al.,**

**Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

After service of the pro se Plaintiff's amended civil rights complaint, ECF No. 7, Defendants filed a motion to dismiss on December 16, 2019. ECF No. 16. Plaintiff was advised of his obligation to file a response in opposition, ECF No. 17, and Plaintiff's response, ECF No. 21, was timely filed.

An Administrative Order was entered in early April 2020, ECF No. 22, reassigning this case to the undersigned Magistrate Judge. The case number has changed as shown above and must now be included on all documents filed to reflect the change in judicial assignments.

**Allegations of the Amended Complaint**

Plaintiff, a prisoner incarcerated in the custody of the Florida Department of Corrections, filed an amended complaint against three Tallahassee police officers who are sued in both their individual and official capacities.  ECF No. 7 at 1.  Plaintiff generally alleged that he was falsely arrested and subjected to an unlawful stop and seizure by Defendant Blevins.  *Id.* at 5.  On November 15, 2017, Defendant Blevins responded to "an alleged 911 call that" Plaintiff contends was "not corroborated."  *Id.*  Instead of releasing Plaintiff after confirming he had no outstanding warrants, Defendant Blevins "proceeded to search Plaintiff without cause."  *Id.*  Plaintiff alleged that when Defendant Blevins refused to give "his identification card back and release him," a "situation developed into [Defendant] Blevins called for back up."  *Id.*

Defendant Blevins was joined by Defendant Farmer, and the two officers "without warning or explanation," dragged Plaintiff between their patrol cars and physically assaulted him.  *Id.* at 5-6.  When Defendant Hill arrived on scene, the officers forcefully twisted Plaintiff's arms and handcuffed him.  At some point, Plaintiff was "tazed in his left arm and right leg."  *Id.* at 6.

Case No. 4:19cv288-RH-MAF

Plaintiff complained that although he was hurt and a paramedic was called to the scene, all three Defendants denied him medical attention." *Id.* at 6, 12-13. Plaintiff alleged that he was immediately taken to the Leon County Detention Facility and, despite his "excruciating pain," he was given only Tylenol and Ibuprofen.[1] *Id.* at 6.

Plaintiff alleged that on November 15, 2017, he "was not under arrest and did not commit any crime." *Id.* at 8. He contends that Defendants "ploted [sic] a reason to hold Plaintiff on scene" by falsely reporting that Plaintiff was experiencing "mental issues" to Baker Act him. *Id.* at 8-10.

Plaintiff asserts claims for false arrest without probable cause against all three Defendants. *Id.* He also asserts that Defendants used excessive force "when there [was] no need for any violence." *Id.* at 11-12. Finally, Plaintiff asserts claims for the denial of medical care. *Id.* at 12-13. Plaintiff seeks compensatory and punitive damages from each Defendant, a declaratory judgment, and injunctive relief. *Id.* at 14-16. In particular, Plaintiff wants the Defendants to face criminal charges for falsifying records, conspiracy, and obstruction of justice. *Id.* at 16.

---

[1] Plaintiff further states that medical staff in the Department of Corrections have also given him nothing but Ibuprofen. *Id.* at 7.

Case No. 4:19cv288-RH-MAF

**Motion to Dismiss**

Defendants contend that Plaintiff's amended complaint fails to state a claim upon which relief may be granted.  ECF No. 16 at 2.  Defendants assert that there was "probable cause to take Plaintiff into protective custody" and advise that "Plaintiff was ultimately convicted of the crimes charged."  *Id.*  Defendants state that the force used on Plaintiff "was de minimus and reasonable under the circumstances" and he cannot show that he had a "serious medical" need.  *Id.*

Defendants request the Court take judicial notice of certain documents from state court.  ECF No. 16 at 4.  Defendants advise that Plaintiff was convicted by a jury of "resisting an officer without violence (1st degree misdemeanor) and depriving an officer of weapon (3rd degree felony)."  ECF No. 16 at 3.  Thus, Defendants request judicial notice be taken of three exhibits: (A) the probable cause affidavit written by Defendant Blevins; (b) the Information filed against Plaintiff in case number 2017-CF-3745; and (C) the judgment and sentence entered after the guilty verdict.  *Id.*

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to

Rule 12(b)(6) for failing to state a claim upon which relief can be granted is

whether the plaintiff alleged enough plausible facts to support the claim

stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167

L. Ed. 2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S.

41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570,

127 S. Ct. 1955).  A complaint's well-pleaded factual allegations are

accepted as true, but "conclusory allegations" unsupported by facts are

"not entitled to an assumption of truth."  Randall v. Scott, 610 F.3d 701,

709-10 (11th Circ. 2010). Thus, dismissal is not permissible because of "a

judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct.

at 1965 (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827,

104 L. Ed. 2d 338 (1989)).

"A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged" Iqbal, 129 S. Ct. at 1949 (citing

Twombly, 550 at 556).  When reviewing a motion to dismiss, the Court

must construe the complaint in the light most favorable to the Plaintiff and

accept the factual allegations as true.  The pleading standard is not

heightened, but flexible, in line with Rule 8's command to simply give fair

notice to the defendant of the plaintiff's claim and the grounds upon which it

rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L.

Ed. 2d 1 (2002).  Pro se complaints are held to less stringent standards

than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967

(11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct.

594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must

provide sufficient notice of the claim and the grounds upon which it rests so

that a "largely groundless claim" does not proceed through discovery and

"take up the time of a number of other people."  Dura Pharmaceuticals, Inc.

v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in Twombly, 127 S. Ct. at 1966).

Analysis of a motion to dismiss is generally limited to the face of the

complaint and any attachments.  Brooks v. Blue Cross and Blue Shield of

Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997).  "However, where

the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at 1369 (quoting Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)).  Thus, it is permissible to "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of America Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (citations omitted).  It is permissible for a court to take judicial notice of state court records. Odion v. Google Inc., 628 F. App'x 635, 638 (11th Cir. 2015).

Here, Defendant submitted Exhibits A, B, and C which are state court records and are central to Plaintiff's factual allegations in the complaint. Plaintiff was afforded the opportunity to respond to the motion and he did not challenge the authenticity of the exhibits.  Moreover, Plaintiff presented one of the exhibits (the probable cause affidavit) with his response to an Order, ECF No. 9, requesting clarification from Plaintiff on the basis for his

current incarceration.[2]  ECF No. 10 at 15-18.  Defendants' exhibits are

properly considered in ruling on the motion to dismiss without converting

the motion into one for summary judgment.

**ANALYSIS**

**1.  Official Capacity Claims**

Plaintiff has sued the Defendants in both their individual and official

capacities.  ECF No. 7 at 1; *see also* ECF No. 21 at 1.  A police officer who

is sued in his or her official capacity, like a municipality, may be held liable

under 42 U.S.C. § 1983 for constitutional violations if a municipal policy or

custom caused the constitutional injury.  Leatherman v. Tarrant Cty.

Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166, 113 S. Ct.

1160, 1162, 122 L. Ed. 2d 517 (1993); *see* Monell v. Dep't of Soc. Servs.,

436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

(establishing standards for municipal liability).  However, "[t]o pursue a

claim in a defendant's official capacity, a plaintiff must allege facts showing

---

[2] An Order entered on September 4, 2019, directed Plaintiff to submit service copies of his amended complaint, but also noted that because Plaintiff alleged false arrest claims, he was required to state "whether or not his current incarceration [was] related to the events described in this case."  ECF No. 9 at 3.  Plaintiff was directed to "consider that a claim for false arrest cannot proceed in a civil rights case if it seeks to undermine his criminal conviction."  *Id.*

that an official policy or custom caused the alleged injury."  McFarland v. City of Tampa, No. 8:13-CV-3076-T-23MAP, 2016 WL 695986, at *3 (M.D. Fla. Feb. 22, 2016).  Plaintiff's amended complaint contains no such factual allegations, nor does Plaintiff allege a history of similar actions.   Because the amended complaint does not contain a factual basis to proceed with an official capacity claim, the motion to dismiss should be granted as to the official capacity claims.

## 2.  False Arrest Claim

To the degree that Plaintiff's claims proceed against the Defendants in their individual capacities, Defendants contend that Plaintiff's amended complaint is insufficient and fails to state a claim.  As to the false arrest claim, Defendants assert that this claim must fail because Defendants had probable cause to arrest Plaintiff.  ECF No. 16 at 11.

An arrest without probable cause violates the Fourth Amendment. Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).  Thus, "[a] claim for false arrest arises when an arrest occurs without a warrant and without probable cause."  Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir.2010) (cited in Jones v. Brown, 649 F. App'x 889, 890 (11th Cir. 2016)).  A claim for false arrest "can underpin a § 1983 claim, but the

existence of probable cause at the time of arrest is an absolute bar to a

subsequent constitutional challenge to the arrest." Brown, 608 F.3d at 734

(citing Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009),

Kingsland v. City of Miami, 382 F.3d 1220, 1226, 1232 (11th Cir. 2004),

and Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996)); *see also*

Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990).  "Probable

cause to arrest exists when an arrest is objectively reasonable based on

the totality of the circumstances." Rankin v. Evans, 133 F.3d 1425, 1435

(11th Cir. 1998) (cited in Kingsland, 382 F.3d at 1226).  Defendants rely on

the facts presented in Defendant Blevins' probable cause affidavit to

explain the totality of the circumstances and, as explained above, judicial

notice may be taken of that exhibit.  ECF No. 16-1.

Defendant Blevins stated that he responded to a "call for service"

when a complainant called 911 to report "that a black male wearing a

striped shirt and dark colored pants was knocking on apartment doors." *Id.*

at 2.  The complainant said the "suspect knocked on her door and begged

her to open the door before taking off running southbound on Jim Lee

Road." *Id.*  Defendant Blevins "observed an individual matching the

description provided by dispatch at the intersection of Jim Lee Road and

Paul Russel Road." *Id.* Defendant Blevins approached Plaintiff who said that he was looking for his mother, but when asked where his mom lived, Plaintiff "either would not or could not provide an answer." *Id.* Defendant Blevins asked Plaintiff for some identification and Plaintiff provided a Department of Corrections' inmate ID card. *Id.* Plaintiff "began to appear very anxious by repeatedly putting his hand in and out of his pockets, looking back and forth, and pacing on the sidewalk." *Id.* Plaintiff consented to a search for weapons, and "no contraband was found during the pat down." *Id.* Defendant Blevins then questioned Plaintiff further about his mother's house and why he was knocking on doors, but "[h]e was unable to provide an answer." *Id.*

Defendant Farmer arrived on scene as Defendant Blevins continued to question Plaintiff. *Id.* Plaintiff "kept saying he needed to go to his sister's house and needed a ride." *Id.* He pointed in the northbound direction but "would not provide an exact address." *Id.* Because Plaintiff could not provide an address, Defendant Blevins denied Plaintiff's request for a ride. *Id.* However Plaintiff "began begging to get in" the Defendant's vehicle and asked the Defendant Blevins to "drop him off 'somewhere' because he needed to talk to his sister and his mother." *Id.* Defendant

again denied the request because Plaintiff would not provide an address and he "indicated that it was within walking distance."  *Id.*

During this conversation, Plaintiff kept "getting very close" to Defendant Blevins, who kept backing up and asking Plaintiff to back away three separate times.  *Id.*  As Plaintiff continued to beg for a ride, Defendant "finally agreed to drop him off down the street and told him to walk over to the rear passenger side of [his] vehicle" but Plaintiff "refused to do so."  *Id.*  At that point, Defendant Blevins told Plaintiff "he was free to go" and Defendant walked back to the driver's side of his vehicle.  *Id.*  However, Plaintiff followed Defendant Blevins, and continued to plead for a ride.  *Id.* at 2-3.  Defendant Blevins told Plaintiff to get on the sidewalk but Plaintiff "was becoming unreasonable."  *Id.* at 3.  Plaintiff continued to follow Defendant Blevins, getting within three feet of him.  *Id.*  Because of Plaintiffs erratic behavior and his refusal to obey verbal commands, Defendant Blevins drew his Taser and again commanded Plaintiff to "get back on the sidewalk."  *Id.*  Plaintiff backed away slightly and Defendant Blevins re-holstered his Taser.  *Id.*

At that time, a vehicle approached and Plaintiff "began quickly walking toward it" in an apparent "attempt to flag it down."  ECF No. 16-1 at

3.  Because Plaintiff was now running into the street and based on his prior erratic behavior, Defendant Blevins believed that Plaintiff "was a danger to himself or others based on his mental condition." *Id.* Defendants Blevins and Farmer grabbed Plaintiff "by the arms in an attempt to guide him away from the vehicle and back to [Blevins'] patrol car." *Id.* As they attempted to put Plaintiff into protective custody, Plaintiff resisted and tried to get out of their grasp. *Id.* Both Defendants pushed Plaintiff against the side of the vehicle but were unable to "gain control of his hands." *Id.* During the scuffle, Defendant Blevins attempted to deploy his Taser but Plaintiff was able to twist away "and the deployment was unsuccessful." *Id.* Plaintiff then grabbed Defendant Blevins' wrist, pushing him away, causing Defendant Blevins to drop his Taser. *Id.* Defendants continued to wrestle Plaintiff to the ground. While on the ground, Plaintiff was refusing to obey commands, striking Defendant Farmer, and attempting to bite him. *Id.* Defendant Hill arrived on scene and, with his assistance, the officers were able to place Plaintiff in handcuffs, which were double locked. *Id.*

EMS was called to the scene to check Plaintiff for injuries. ECF No. 16-1 at 3. Plaintiff "refused to answer any of their questions and only stated that his arms hurt because they were in handcuffs." *Id.* One of the

Case No. 4:19cv288-RH-MAF

Taser probes was imbedded in Plaintiff's "pants near his beltline, but neither" probe "was imbedded in his skin." *Id.* Photos were taken "of all injuries," and Plaintiff was transported to the Leon County Jail without incident. *Id.*

Plaintiff was charged by Information with three counts: (1) resisting an officer with violence, (2) battery on a law enforcement officer, and (3) depriving an officer of a weapon. ECF No. 16-2. Plaintiff was convicted by a jury of resisting an officer without violence (1st degree misdemeanor) and depriving an officer of weapon (3rd degree felony), and was sentenced to 60 months and committed to the custody of the Florida Department of Corrections. ECF No. 16-3 at 1, 4.

Florida law permits a person to "be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness . . . [t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior." FLA. STAT. § 394.463(1)(b)(2). Florida law also authorizes a law enforcement officer to "take a person who appears to meet the criteria for involuntary examination into custody and deliver the

person" to an appropriate facility for examination.  FLA. STAT.

§ 394.463(2)(a)(2).

"In the context of a mental-health seizure, '[w]hen an officer stops an

individual to ascertain that person's mental state (rather than to investigate

suspected criminal activity), the Fourth Amendment requires the officer to

have probable cause to believe the person is dangerous either to himself or

to others.'"  Roberts v. Spielman, 643 F.3d 899, 905 (11th Cir. 2011)

(quoted in May v. City of Nahunta, Georgia, 846 F.3d 1320, 1327-28 (11th

Cir. 2017)).  Defendant Blevins' affidavit shows an objectively reasonable

basis for his belief that Plaintiff was suffering from some type of mental

condition because of his erratic behavior, randomly knocking on doors, his

inability to comply with repeated commands, provide an address for his

mother, and placing himself in danger by stepping into the roadway to flag

down a vehicle.  Defendants have shown probable cause for seeking to

take Plaintiff into protective custody to ensure his safety.  Thus, grabbing

Plaintiff by the arms and attempting to lead Plaintiff to the patrol car was

not unlawful.  Roberts, 643 F.3d at 904 (finding the deputy was "acting

pursuant to his official duty to protect life, and was within his authority in

carrying out that duty, when he grabbed Roberts and briefly removed her

from the house to speak with and observe her to ensure that she was not suicidal").

The situation quickly changed, however, as Plaintiff actively resisted Defendants' efforts to take hold of Plaintiff and guide him out of the street and to the patrol car. Plaintiff's resistance leg to a struggle which Plaintiff alleged "developed into officer Blevins calling for back up . . . ." ECF No. 7 at 5. The facts alleged in the probable cause affidavit demonstrate that Plaintiff fought to get out of Defendants' grasp, pushed Defendant Blevins' hand away and grabbed his wrist which caused Defendant Blevins to drop the Taser. Plaintiff also wrestled with the officers on the street. Those facts are sufficient to demonstrate probable cause to arrest Plaintiff for resisting an officer and depriving an officer of a weapon.

Plaintiff's only dispute with this issue is his contention that no evidence was presented to show that a 911 call was made. ECF No. 21 at 3. It is true that "falsifying facts to establish probable cause is patently unconstitutional." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoted in Jones, 649 F. App'x at 890-91). However, Plaintiff's dispute on this point is immaterial since it is irrelevant why Defendant Blevins encountered Plaintiff. The facts supporting probable cause for

Plaintiff's arrest arose during the Defendant's personal interaction with Plaintiff, not because of the 911 call.  It was during that interaction that Plaintiff fought with officers and caused Defendant Blevins to lose control of his Taser.  Accordingly, the motion to dismiss the  false arrest claims should be granted because there was probable cause to arrest Plaintiff.

Additionally, another basis also exists to dismiss the false arrest claims.  Defendants point out that Plaintiff was convicted of two charges (resisting an officer without violence and depriving an officer of a weapon). ECF No. 16-3 at 1.  "Under Florida law, a plea of guilty or no contest and judgment of conviction arising from an arrest or imprisonment claimed to be false are conclusive evidence that probable cause existed for the arrest or imprisonment unless the judgment was obtained by fraud, perjury, or corruption."  Tabor v. McNesby, No. 3:07CV174-RS-MD, 2007 WL 9736175, at *6 (N.D. Fla. June 6, 2007) (citations omitted).   Because there are no allegations of fraud, perjury, or corruption, Plaintiff's conviction establishes probable cause for his arrest.

Moreover, "a criminal conviction arising from an arrest forecloses a plaintiff from collaterally attacking the legality of the arrest in a civil action." Tabor, 2007 WL 9736175, at *6 (citing, *inter alia*, Heck v. Humphrey, 512

U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)).  Here, Plaintiff has

not disputed that he was convicted of those charges.  Indeed, Plaintiff

admits that he was convicted, but notes that his conviction is on appeal.

ECF No. 21 at 5.  Plaintiff also points out that he was acquitted of the

battery on a law enforcement officer charge.  *Id.*  Notwithstanding, Plaintiff

was convicted of two charges and sentenced to a term of imprisonment

which he is currently serving, and which arose from the arrest at issue in

this case.

The law is clear that one may not seek monetary damages or

injunctive relief which would collaterally undermine a criminal conviction or

sentence.  Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 1841,

36 L. Ed. 2d 439 (1973) (prohibiting injunctive relief which would result in

speedier or immediate release from a term of imprisonment); Heck v.

Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994)

(barring a claim for monetary damages related to a conviction or sentence

until the plaintiff can show that the conviction or sentence has been

invalidated).  "In Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364,

2372-73, 129 L. Ed. 2d 383 (1994), the Supreme Court 'held that a state

prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  Edwards v. Balisok, 520 U.S. 641, 643, 117 S. Ct. 1584, 1586, 137 L. Ed. 2d 906 (1997) (quoted in Harden v. Pataki, 320 F.3d 1289, 1291 (11th Cir. 2003)). Put another way, "a state prisoner may not maintain an action under 42 U.S.C. § 1983 if the direct or indirect effect of granting relief would be to invalidate the state sentence he is serving."  Spencer v. Kemna, 523 U.S. 1, 21, 118 S. Ct. 978, 990, 140 L. Ed. 2d 43 (1998) (quoted in Pataki, 320 F.3d at 1295).

In this case, Plaintiff admits he was convicted and acknowledges that his conviction has not yet been overturned.  Thus, it has "not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."  Pataki, 320 F.3d at 1294 (quoting Heck, 512 U.S. at 486-87, 114 S. Ct. at 2372).  Accordingly, Plaintiff cannot meet the "favorable termination requirement" for bringing a § 1983 action for false arrest and those claims should be dismissed as barred by Heck.

## 2. Excessive Force Claim

Plaintiff asserted claims against all three Defendants for the use of excess force.  ECF No. 7 at 11-12.  Although Plaintiff alleged the claim under the Eighth Amendment, it is appropriately considered as a Fourth Amendment claim since it occurred during his arrest and not in the prison setting.[3]  "Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing."  Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) (cited in Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994)); *see also* Sebastian v. Ortiz, 918 F.3d 1301, 1306 (11th Cir. 2019)).  Additional considerations when determining the reasonableness of the force used are: "(1) the need for the application of force, (2) the relationship between the need and amount of

---

[3] The Supreme Court made clear in Graham v. Connor that when an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment" and "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  Graham v. Connor, 490 U.S. 386, 394-395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); *see also* Encarnacion v. Wade, No. 8:18-CV-2527-T-02AAS, 2019 WL 5653429, at *1 (M.D. Fla. Oct. 31, 2019).

force used, and (3) the extent of the injury inflicted."  Draper v. Reynolds,

369 F.3d 1270, 1277-78 (11th Cir. 2004) (quoted in Encarnacion v. Wade,

No. 8:18-CV-2527-T-02AAS, 2019 WL 5653429, at *2 (M.D. Fla. Oct. 31,

2019)); Jones v. City of Dothan, Ala., 121 F.3d 1456, 1460 (11th Cir. 1997)

(noting that evaluating an excessive force claim must be "based on

reasonableness" and must consider "the need for force, the amount of

force used, and the injury inflicted").

Plaintiff's complaint alleged that Defendants Blevins and Farmer were

punching and kicking him, and slamming his "head down to the concret

[sic]" and used a Taser on him although there was no need for any

violence.  ECF No. 7 at 11.  The excessive force claim against Defendant

Hill is for twisting Plaintiff's arm and forcefully handcuffing Plaintiff.  Id. at

12.  Importantly, the excessive force claims are not barred by Heck

because success on these claims does not *necessarily* undermine or

otherwise invalidate Plaintiff's convictions for resisting an officer without

violence or depriving an officer of a weapon.  *See* Hadley v. Gutierrez, 526

F.3d 1324, 1331 (11th Cir. 2008) (finding there was "no Heck bar" to

plaintiff's excessive force claim even though plaintiff entered a guilty plea to

resisting arrest with violence).

It is true that pushing or shoving in the course of making an arrest is

not a constitutional violation.  Nolin v. Isbell, 207 F.3d 1253, 1256 (11th Cir.

2000); Post, 7 F.3d at 1559-60 (11th Cir. 1993) (finding that an officer's

pushing the plaintiff against a wall "might have been unnecessary" but it

"was not plainly unlawful").  It is also "recognized that a 'typical arrest

involves some force and injury.'"  Rodriguez v. Farrell, 280 F.3d 1341, 1351

(11th Cir. 2002) (quoted in Sebastian, 918 F.3d at 1306).

Plaintiff's allegations, which must be accepted as true at the motion

to dismiss stage, assert that Defendants used force unnecessarily and

unreasonably.  ECF No. 7.  Defendants contend that "to the extent some

force was needed, it was both justifiable and objectively reasonable when

the totality of the circumstances is considered."  ECF No. 16 at 18.  Thus,

Defendants necessarily point to facts asserted in the probable cause

affidavit to support that argument.  If considered, those facts would suggest

there is a dispute of fact between Plaintiff's facts and Defendants' facts.

However, while judicial notice is properly taken of public records to

demonstrate why the false arrest claim could not go forward under Heck,

the affidavit should not be considered in ruling on the excessive force

claim.  In ruling on a motion to dismiss, the amended complaint must be

viewed "in the light most favorable to the plaintiff, accepting all of the plaintiff's well-pleaded facts as true." Jones, 649 F. App'x at 890 (citing Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1056-57 (11th Cir. 2007)). Disputing the truth of Plaintiff's allegations must await summary judgment or trial.

### a. Defendant Hill

The only allegation brought against Defendant Hill is that he forcefully applied the handcuffs and twisted Plaintiff's arm. Plaintiff complained that the handcuffs were so tight that they cut off his circulation and he "lost all feeling" in his hand, wrist and arms. ECF No. 7 at 6. Defendant Hill contends this claim is insufficient because the force was minimal and "does not rise to the level of excessive force." ECF No. 16 at 16.

In Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997), the Eleventh Circuit found that police officers were entitled to qualified immunity for putting handcuffs on too tightly when arresting the plaintiff, and leaving them on for roughly twenty minutes which caused pain and skin abrasions. Even though the plaintiff was not disorderly and it appeared no force was required, the Eleventh Circuit found that the "minor nature of" plaintiff's injury reflected "that minimal force was used to apply

the handcuffs." <u>Gold</u>, 121 F.3d at 1447.  Subsequent cases have also held

that "[p]ainful handcuffing, without more, is not excessive force in cases

where the resulting injuries are minimal."  <u>Rodriguez v. Farrell</u>, 280 F.3d

1341, 1351 (11th Cir. 2002) (citations omitted).

In a recent case, the plaintiff (Sebastian) complained that arresting

officers intentionally applied handcuffs too tight, refused requests to loosen

them even after he "complained that he was beginning to lose feeling in his

hands." <u>Sebastian</u>, 918 F.3d at 1305-06.  Sebastian "was transported to a

police station where he was detained for more than five hours, still

handcuffed behind his back."  918 F.3d at 1306.  As a result, he suffered

severe and permanent injuries which the court found was more than de

minimis.  *Id.* at 1309.  Finding all the factors weighed in plaintiff's favor, the

court rejected the qualified immunity defense.  *Id.* at 1309-10 (finding that

speeding was a minor offense, there was little safety risk, plaintiff posed no

threat to officer safety or to others, and plaintiff was not resisting arrest or

attempting to flee).  That case is considerably different from this case,

however.

Here, Plaintiff did not allege that he was left in handcuffs for an

excessive amount of time nor has he shown that Defendant Hill used more

force than was necessary to apply the handcuffs considering that Plaintiff was involved in a scuffle with the other two Defendants at the time Defendant Hill arrived on the scene.  Plaintiff's only contention was that Defendant Hill grabbed him and was "twisting his arm painfully and focefully [sic] cuffing him in a crude an unusual manner."  ECF No. 7 at 10. He complained that the cuffs were "so tight" that he lost feeling in his hands and arms.  *Id.* at 12.  Plaintiff alleged no further specific injury. Without more, those allegations are insufficient to support an excessive use of force and Defendant Hill's motion to dismiss should be granted as to this claim.

### b.    Defendants Farmer and Blevins

Plaintiff alleged that Defendants Farmer and Blevins, without warning, dragged him between two patrol vehicles and punched, choked, kicked, and kneed him "all over his body."  ECF No. 7 at 5-6.  Plaintiff specifically alleged there was "no need for any violence."  *Id.* at 11.  The amended complaint reveals that after he was handcuffed, all force ceased.

Accepting Plaintiff's allegations as true, he has shown that there was no need for any force to be used against him.  Sufficient cases in this Circuit establish that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  Hadley, 526 F.3d at 1330.

Plaintiff's amended complaint stated that there was no basis for using any force against him and doing so without cause or justification is sufficient to support an excessive force claim against those officers.

Yet relevant to this claim is "the need for force, the amount of force used, and the injury inflicted." Jones, 121 F.3d at 1460. Plaintiff's only allegations of injury were "cuts, lacerations, and Tazer marks on his body, swelling on his face, as well as multiple bruises and swellings on his body." ECF No. 7 at 6. The extent of Plaintiff's "injuries is the most telling factor in revealing the unprovoked force exerted on him" by Defendants Blevins and Farmer. *See* Stephens v. DeGiovanni, 852 F.3d 1298, 1326 (11th Cir. 2017) (finding that plaintiff had "substantial bodily injuries" which were "severe and permanent"). Those alleged injuries were minor and demonstrate that only minor force was used against Plaintiff. Williams v. Sirmons, 307 F. App'x 354, 362 (11th Cir. 2009) (noting that where an arrestee is not harmed, it must be concluded that the force used was minimal and reasonable). "The Eleventh Circuit has also considered de minimis injury as evidence that the level of force applied against the plaintiff was also merely de minimis, as opposed to excessive." J.B. ex rel. Brown v. Amerson, 890 F. Supp. 2d 1299, 1306 (N.D. Ala. 2012), *aff'd*, 519 F.

App'x 613 (11th Cir. 2013) (citing <u>Nolin</u>, 207 F.3d at 1256) (quoting <u>Gold</u>, 121 F.3d at 1446-47) ("The minor nature of this injury reflects that minimal force was used to apply the handcuffs.")).  In light thereof, it should be concluded that Plaintiff's minimal injuries reflect that only a minimal amount of force was used against him which is insufficient to support an excessive force claim.  The motion to dismiss should be granted in favor of Defendants Blevins and Farmer as to this claim.

### 3.  Denial of Medical Care Claims

Plaintiff alleged that all three of the Defendants denied his request for medical care, even though a paramedic was called to the scene.  ECF No. 7 at 6.  Plaintiff claimed that the paramedic "was willing to take" him to the hospital, but the Defendants denied him that right in violation of the Eighth Amendment.  *Id.* at 12-13.

Despite Plaintiff's labeling of his claim as one brought under the Eighth Amendment, that Amendment "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime."  <u>Hamm v. DeKalb Cty.</u>, 774 F.2d 1567, 1572 (11th Cir. 1985).  Claims challenging the denial of medical care by pre-trial detainees or arrestees is governed by the Fourteenth Amendment's Due

Process Clause.  Hamm, 774 F.2d at 1572.  Nonetheless, analysis of such claims is measured by the same Eighth Amendment standard: whether a defendant was deliberately indifferent to the plaintiff's serious medical needs.  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005)).  To present a claim for the denial of medical care, a plaintiff must shoulder three burdens: (1) show a serious medical need; (2) show that a defendant was deliberately indifferent to that need; and (3) show injury because of the Defendant's conduct.  Goebert, 510 F.3d at 1326 (citing Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005), and Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995)).  In this case, Plaintiff has not shown that he had a serious medical need that required immediate attention.

A "serious medical need" is defined "as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (cited in Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)).  "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition."

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoted in

Fernandez v. Metro Dade Police Dep't, 397 F. App'x 507, 511-12 (11th Cir.

2010).  Plaintiff has not alleged sufficient facts to show that he had a

"serious medical need" because he alleged nothing more than cuts and

bruises.  See Fernandez, 397 F. App'x at 512 (holding that "a bloody nose

and mouth which lasted over five minutes, facial bruising, pain,

disorientation, and blood clogs in [plaintiff's] nose" were not serious

medical needs); Hinson v. Bias, 927 F.3d 1103, 1122 (11th Cir. 2019)

(finding that superficial skin abrasions and a bruise were insufficient to

show a serious medical need).  Furthermore, Plaintiff has not shown that

he has suffered any injury in not being provided treatment at the time of his

arrest, that he needed to go to the hospital, or that delay in receiving

treatment worsened his condition or exacerbated his injuries.  Hinson, 927

F.3d at 1122.  The motion to dismiss should be granted in favor of

Defendants as to Plaintiff's medical care claims as well.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF

No. 16, be **GRANTED** and Plaintiff's amended complaint, ECF No. 7, be

**DISMISSED** for failure to state a claim upon which relief may be granted

pursuant to 28 U.S.C. § 1915(e)(2).  It is additionally **RECOMMENDED** that

the Order adopting this Report and Recommendation direct the Clerk of

Court to note on the docket that this cause was dismissed pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).

      **IN CHAMBERS** at Tallahassee, Florida, on June 19, 2020.


   S/     Martin A. Fitzpatrick          
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**